SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------x
JEFFREY TOBACK, on behalf of himself
and all others similarly situated,

**COMPLAINT**

Plaintiffs,

Index No. 06-007246

-against-

**Jury Trial Demanded**

GOOGLE, INC.,

Defendant.
-----------------------------------------------------------------x

MAY 04 2006

NASSAU COUNTY
CLERK'S OFFICE

Plaintiff, JEFFREY TOBACK, by his attorneys, Meiselman, Denlea, Packman, Carton & Eberz P.C., as and for his complaint, alleges, with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

Nature of this Case

1.  This action is brought by Plaintiff, individually and on behalf of concerned parents and citizens throughout the country, against a multi-billion dollar business that makes its money, in part, by facilitating deviant criminals in the procurement, transfer and marketing of illicit and patently illegal material, including child pornography and other obscenity that is banned under federal and state law.

2.  Defendant is a publicly-traded company and the owner of perhaps the most valuable "real estate" on the Internet – its "Google" Internet search website (the "Google website"). Defendant's market value as of April 11, 2006 was approximately $121 billion. Defendant's proprietary automated search technology used on the Google website allows a user to obtain nearly instant access to desired websites and content by simply typing one or more search words.

3.  The website is valued in the billions of dollars because in addition to providing the user with the desired search results (i.e., the relevant websites and content corresponding to the search terms), each results screen also posts advertisements and sponsorship banners, along with links to advertisers' websites that are sorted and appear on screen based on relevant subject matter or presumed user interest. For example, if the user conducts a search with the terms "hotels" and "New York" to learn about New York hotels for an upcoming trip, Google will also provide "sponsored links" to commercial websites that book hotel rooms and provide other commercial goods and services to potential hotel guests.

4.  As part of its recently announced deal to provide search engine services in China (expected to be worth billions of dollars), Defendant has agreed as a condition to doing business in China to block various search terms deemed by the Chinese government to be illegal, including the words "democracy" and "Tibet." Unfortunately for Americans or our nation's children, Defendant has refused to employ its technology – or even a fraction of the money it will earn by banning "democracy" in China – to block "child pornography" and other search terms that have led to and continue to lead to our nation's children being exposed to illegal, disgusting and obscene content.

5.  In contrast to Defendant's "Mission," prominently displayed on page 1 of its most recent Annual Report, Defendant does not "put the needs of [its] users first." Rather, Defendant continues to put its economic gains ahead of the interests and well-being of America's children and their care givers who are being bombarded with child pornography and other repulsive material that is illegal to distribute to children (collectively, "Child Pornography"). Shamefully, Defendant is knowingly generating

2

billions of dollars from the pornography trade and illicit profiteers, in intentional and reckless disregard of its legal duties and the well-being of our nation's children.

6. Simply put, Defendant is the largest and most efficient facilitator and distributor of Child Pornography in the world. Defendant has the technological and operational resources to curtail, if not eradicate, Child Pornography. However, Defendant has no desire to do so <u>not</u> because it is a defender of "free speech" and "privacy rights" on the Internet but, rather, because Child Pornography is a multi-billion dollar industry that has become an obscenely profitable and integral part of Defendant's business model.

7. This case is not about the First Amendment; the Supreme Court has long ago determined that the Constitution does not protect an individual's rights to view children engaged in sex acts, nor does the Bill of Rights provide any insulation for any other form of Child Pornography. Rather, this case is about a multi-billion dollar company that promotes and profits from Child Pornography. Defendant's veiled and specious attempts to sully the Constitution is further revealed by the fact that Defendant violates the privacy rights of Google users every day by storing user information that Defendant will use to generate additional advertising and other revenue in the future. Unfortunately, Defendant refuses to use that same technology and data storage capability to ferret out child pornographers and other Child Pornography profiteers.

8. Defendant has a duty to put the well-being of our nation's children ahead of the billions of dollars it realizes in Child Pornography profits. Defendant's refusal to do so is in breach of its legal duties to report and curtail criminal activities on its website property, and it is time that Defendant be held accountable.

9. Accordingly, this action is brought to compel Defendant to honor its legal duties, and specifically to compel Defendant to do the following:

(i) Prohibit on its Google website links or advertising relating to websites that display, market or otherwise provide access to Child Pornography;

(ii) Prohibit access through the Google website (through use of the Google search technology or otherwise) to pornographers and traders in Child Pornography;

(iii) Comply with state and federal statutes relating to Child Pornography, including, without limitation, the Protection of Children from Sexual Predators Act of 1998, which imposes a duty upon and obligates Defendant to report to law enforcement authorities violations of child pornography and obscenity laws;

(iv) Post warnings to purveyors and distributors of Child Pornography that their criminal activities are subject to monitoring and reporting to law enforcement agencies; and

(v) Provide to concerned parents, community organizations and other Google website users filters and all other available or easily developed technology, which will block the display of, and access to, Child Pornography.

### Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to CPLR § 349 and

4

the common law of the State of New York. Defendant does actual business throughout the State of New York, including through the operation and business conducted through its interactive website accessible to consumers and users in, and residents of, the State, and the multitude of advertising, marketing and other business deals, ventures and activities throughout the State.

11.  Venue is proper in this District because Plaintiff Jeffrey Toback resides in Nassau County, has used Defendant's services in Nassau County and because Defendant actually does business in Nassau County.

### Parties

12.  Plaintiff Jeffrey Toback is a resident of Nassau County, who is married with three school-age children. As a concerned parent, he endeavors to protect his children from the inundation of Child Pornography that can be accessed over the Internet through the Google website. Despite his best efforts to monitor his children and to carry out his duties as a parent to insulate his children from harm, his children are being exposed to inappropriate, harmful, obscene and illegal material on the Internet through the Google website. Plaintiff would use, but Defendant does not make available to him and other concerned community members, effective technological tools, such as filters, to allow Plaintiff to restrict his children's access to pornographic, obscene and illegal content through the Google website.

13.  Mr. Toback is also a Nassau County Legislator, representing the 7th Legislative district, which includes Barnum Island, Bay Park, Cedarhurst, East Rockaway, Harbor Isle, Hewlett, Hewlett Bay Park, Hewlett Harbor, Hewlett Neck,

Inwood, Island Park, Lawrence, Oceanside, South Valley Stream, Woodmere and Woodsburgh. As a four-term Legislator, he is aware that his concern for the nation's children is shared by his constituents, as well as parents and concerned citizens throughout the country.

14. Defendant is a publicly-traded corporation and incorporated in the State of Delaware. Defendant's principal place of business is 1600 Amphitheatre Parkway, Mountain View, California 94043.

## Operative Facts

15. Defendant is a publicly-traded company and the owner of the Google website – perhaps the most valuable real estate on the Internet. Defendant's market value as of April 11, 2006 was approximately $121 billion. Defendant's proprietary automated search technology used on the Google website allows a user to obtain nearly instant access to desired websites and content by simply typing one or more search words.

16. For instance, if a user types in the words "Bronx Zoo," a results page will, in less than one second, display links to over one million websites that refer to or include information about the Bronx Zoo. The Google website is so omnipresent that the "Google" brand has become almost synonymous with conducting an Internet search.

17. The Google website is valued in the billions of dollars because in addition to providing the user with the desired search results (i.e., the relevant websites and content corresponding to the search terms chosen by the user), each results screen

6

also posts advertisements and sponsorship banners, along with links to advertisers' websites. These advertisements and sponsorship banners are sorted and appear on screen based on relevant subject matter or presumed user interest.

18. Accordingly, Defendant's business model is basically the same as any other commercial landlord that owns a shopping mall, except that Google's shopping mall is on the Internet and extraordinarily more profitable than any other mall on Earth. As a mall owner, Google generates billions of dollars in revenue by aggregating a community of "shoppers" (i.e., the millions of users of the Google site's search technology) who conduct business with millions of retail "tenants" (i.e., the commercial websites that market and sell to Google users). Similarly, Google charges rent to its retail tenants, including a percentage rent based on the revenues generated by each tenant; in Google's case, these tenants are the advertisers/sponsors that pay to have their website links prominently displayed.

19. Every incremental user/shopper of the Google service adds corresponding value to Defendant because Defendant, as owner/landlord of the Google real estate, is able to extract more advertising and sponsorship fees from its advertisers/retail tenants. Pursuant to the deals that Defendant has with advertisers, each time a shopper "clicks" on a sponsored website link or sees an advertisement, Defendant generates additional revenue.

20. Indeed, the relationship with Google users and websites paying Defendant advertising fees is a self-reinforcing and symbiotic one that works to Defendant's significant economic benefit. Defendant has a vested economic interest in including as many websites as possible in its indexed database, as well as advertisers

and sponsors (including websites that offer pornographic, obscene and illegal content). If a certain type of website or advertising is restricted by Defendant from appearing in search results or otherwise prohibited from being displayed, fewer shoppers (i.e., users who have an interest in those websites) would use (or would use less frequently) the Google website. This, of course, would lead to a reduction of revenues and profits for Defendant.

21. Given that pornography is a multi-billion dollar industry, Google, in turn, generates billions of dollars of company value directly from permitting access to and doing advertising business with distributors of illegal child pornography and other obscene content.

22. In other words, the Google site's success, and thus Defendant's financial fortunes, have been and continue to be predicated on the three basic objectives of mall ownership: (i) building the largest mall possible; (ii) filling that mall with as many retail tenants as possible; and (iii) attracting as many shoppers to the mall as possible. Each of these three inter-related business prongs are supported by Defendant's core proprietary technology – i.e., its user-friendly search tools -- that serves as the foundation for Google's Internet mall.

23. Indeed, Google's search capability, which allows users to match up with hundreds of thousands of websites in less than one second – is so simple and easy that even a child can use it – and, as described below, this is the unabated injury and harm that Defendant has, in fact, facilitated, aided and abetted, in dereliction of its legal duties

24. Unfortunately for Plaintiff and other similarly situated community

8

members, who have strong and compelling interests in protecting children from criminal activity and material that federal and state statutes unequivocally ban, Defendant is knowingly generating billions of dollars from the pornography trade and Child Pornography profiteers, in intentional and reckless disregard of its legal duties and the well-being of our nation's children.

25.    As a "mall owner" of the Google website, Defendant has a duty, like any other landlord, to insure that criminal activity and other hazardous conditions that it has a reasonable belief may exist not be permitted to go unabated. Yet, Defendant refuses to undertake even a half-hearted effort of posting prominent warnings to users and advertisers that Defendant will report and ban any illegal activity or trade involving Child Pornography. Nor does Defendant filter out search terms for Child Pornography that it knows, but chooses to ignore intentionally or recklessly, is illegal.

26.    Simple searches on Google not only turn up results which provide easy access to Child Pornography that is readily available for minors to view in contravention of the law but also, alarmingly, reveal "sponsored links," such as the following obscene and illegal website advertisement from which Defendant is generating sponsorship revenue:

> "Sexual experiences of young teens caught on video.
> Free Trailers!  www seventeen_____.com"
> (website name partially deleted by Plaintiff)

27.    Apparently, when billions of dollars in potential profits are at stake in connection with its deal with the government of China, Defendant is willing to accede to the demands of the Chinese autocrats to block the search term "democracy," but when it comes to the protection and well-being of our nation's innocent children, Defendant

9

refuses to spend a dime's worth of resources to block Child Pornography from reaching children or to filter out the search terms "child pornography," "kiddie porn," "teen porn" and other similarly disgusting and degrading terms or the content to which such terms lead.

28. It should be noted that Defendant has recently attempted to fight a subpoena request issued by the federal government for information relating to on-line searches for child pornography and other obscene content. Although reasonable and responsible community members may differ on praising or scolding Defendant for what Defendant believes is a good faith and principled defense of First Amendment rights in the face of a legal battle with the federal government, no reasonable or fair-minded person can defend Defendant's policies and practices of facilitating, aiding and abetting pornographers in distributing Child Pornography.

29. As such, what this case is not about is as important as what it is about. First, this action is brought by concerned community members and not the Government attempting to deny First Amendment free speech rights. Second, and most importantly, the harm which Plaintiff is seeking to remedy is specifically and narrowly tailored to illegal content; Plaintiff does not seek to abate or redress any harm or seek any remedy that implicates any consenting adult's right to view or distribute legally protected content or speech.

30. The subject matter of this lawsuit – Child Pornography – has been ruled illegal and banned by the federal government and all fifty states by statute. Furthermore, the Supreme Court has long ago ruled that the Constitution does not protect an individual's revolting desire to view children engaged in sex acts, nor does

the Bill of Rights provide any insulation for any other form of Child Pornography.

## FIRST CAUSE OF ACTION

### (Negligence)

31. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 30 above as if fully set forth herein.

32. By engaging in the conduct described above, Defendant has actual and imputed knowledge of, and notice that, illegal activities are being conducted through, and in connection with the operation of, its Google website.

33. Defendant has a duty to Plaintiff and similarly situated users of the Google website to take active steps to remedy and abate such illegal activities and not to aid, abet and facilitate the harm that arises and the damages that are proximately caused by such illegal activities.

34. Defendant has breached its duty by failing to remedy and abate or take any reasonable affirmative steps to shield its customers, including minor children, from the dangers and harms created by the illegal activities on the Google website.

35. Defendant's breach of its duty has proximately caused harm to Plaintiff and other similarly situated users of the Google website.

36. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class, the remedy for which shall be determined at trial.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

37. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

11

38. By engaging in the conduct described above, Defendant has actual knowledge and notice that illegal activities are being conducted through, and in connection with the operation of, its Google website.

39. Defendant has intentionally and in reckless disregard for the well-being of its users, including minor children, actively facilitated, provided access to and conducted business to promote the distribution of obscene and illegal content and has aided, abetted and facilitated illegal activities on its Google website.

40. By engaging in the actions and conduct described above, Defendant has caused harm, including emotional distress to Plaintiff and other similarly situated users of the Google website, including minor children.

41. By reason of the foregoing, Defendant is liable to Plaintiff and other similarly situated users of the Google website for the damages that they have suffered as a result of Defendant's actions, the remedy for which shall be determined at trial.

## THIRD CAUSE OF ACTION

(Injunctive Relief)

42. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 - 41 above as if fully set forth herein.

43. Given Defendant's wrongful actions as set forth above, which are ongoing and continuing to harm Plaintiff and the general public, including minor children, the Court should preliminarily and permanently enjoin Defendant from continuing (i) to advertise, promote, or distribute any Child Pornography through its Google website; (ii) to display any links to websites that display, market or provide any access to Child Pornography; (iii) to index or provide access on its Google website (through use of the

Google search technology or otherwise) to any website that distributes, displays or markets Child Pornography; (iv) to violate state and federal statutes relating to Child Pornography, including, without limitation, the Protection of Children from Sexual Predators Act of 1998, which obligates Defendant to report violations of child pornography and obscenity laws; (v) to permit illegal and criminal activities from persisting, unabated, on and through its website property; (vi) to permit users to access the Google website without Defendant first posting conspicuous warnings that users who attempt to search for, access, distribute or market Child Pornography are subject to monitoring and reporting to law enforcement agencies; and (vii) to continue operating the Google website without offering users effective technological tools that will restrict access to Child Pornography.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1. On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the general public have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus punitive damages in an amount to be determined at trial;

2. On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the general public have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

13

3. On Plaintiff's Third Cause of Action, preliminarily and permanently enjoining Defendant from continuing (i) to advertise, promote or distribute any Child Pornography through its Google website; (ii) to display any links to websites that display, market or provide any access to Child Pornography; (iii) to provide access on its Google website (through use of the Google search technology or otherwise) to any website that distributes, displays or markets Child Pornography; (iv) to violate state and federal statutes relating to Child Pornography, including, without limitation, the Protection of Children from Sexual Predators Act of 1998, which obligates Defendant to report violations of child pornography and obscenity laws; (v) to permit illegal and criminal activities from persisting, unabated, on and through its website property; (vi) to permit users to access the Google website without Defendant first posting conspicuous warnings that users who attempt to search for, access, distribute or market Child Pornography are subject to monitoring and reporting to law enforcement agencies; and (vii) to continue operating the Google website without offering users effective technological tools that will restrict access to Child Pornography.

4. Awarding Plaintiff interest, costs and attorneys' fees; and

5. Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated:  White Plains, New York
        May 4, 2006

                                    MEISELMAN, DENLEA, PACKMAN,
                                    CARTON & EBERZ P.C.

                                    By: _____
                                        David J. Meiselman
                                        Jeffrey I. Carton

                                    1311 Mamaroneck Avenue
                                    White Plains, New York 10605
                                    (914) 517-5000
                                    Attorneys for Plaintiff

00179648.WPD

15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

JEFFREY TOBACK, on behalf of himself
and all others similarly situated,

                                    Plaintiffs,

                -against-

GOOGLE, INC.,

                                    Defendant.

Date Filed: 5/4/06
Index No. 06-007246

**SUMMONS**

**Plaintiff designates
Nassau County as the
place of trial**

**The basis of venue is
the Plaintiff's residence
in Nassau County**

To the above named Defendants:

      **You are hereby summoned** and required to serve upon Plaintiff's attorney an Answer to the Complaint in this action within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete, if the Summons is not personally delivered to you within the State of New York. In case of your failure to answer, Judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:      White Plains, New York
               May 4, 2006

                              Yours, etc.

                   By: _____
                         Jeffrey I. Carton
                      MEISELMAN, DENLEA, PACKMAN
                      CARTON & EBERZ P.C.
                      Attorneys for Plaintiff
                      1311 Mamaroneck Avenue
                      White Plains, New York 10605
                      (914) 517-5000

RECEIVED
MAY 0 4 2006
NASSAU COUNTY
COUNTY CLERK'S OFFICE

Defendant:    Google, Inc.
                       1600 Amphitheatre Parkway
                       Mountain View, California 94043